FILED
2021 Nov-04 AM 09:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISON

| | | |
|---|---|---|
| **ABRAHAM KIRONDOMARA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **BENCHMARK ELECTRONICS** | ) | |
| **HUNTSVILLE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## COMPLAINT

---

1.      Plaintiff, Abraham Kirondomara, brings this action against Defendant, Benchmark Electronics Huntsville, Inc. ("Benchmark"), for discrimination in violation of Title VII of The Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), 42 U.S.C. §§ 1981, 1988, 2000e *et seq.* ("§ 1981), and violations of the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601 to -2654 ("FMLA").

2.      Plaintiff seeks equitable relief, compensatory and punitive damages, attorney's fees, and costs.

## JURISDICTION

3.     Jurisdiction is proper under 28 U.S.C. § 1331, 1343, 2201, 2202, and 42 U.S.C. § 12133.

4.     Venue is proper pursuant to 28 U.S.C. § 1391.

5.     Plaintiff fulfilled all conditions precedent to the institution of this action to the extent required under Title VII.

6.     Benchmark's unlawful employment practices alleged herein were committed within the Northern District of Alabama, Northeastern Division.

## PARTIES

7.     Plaintiff is an African American male citizen of the United States and a resident of Madison County, Alabama.

8.     Benchmark is an Alabama corporation that was doing business in this judicial district at all times relevant to this Complaint. Benchmark's principal place of business is located at 4807 Bradford Drive, Huntsville, Alabama 35805.

9.     Benchmark was an "employer" as that term is defined under Title VII, § 1981, and the FMLA.

## ADMINISTRATIVE PROCEEDINGS

10.     Plaintiff timely filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") within one hundred and eighty days of the occurrence of the last discriminatory act by Benchmark. A copy of the Charge is attached as Exhibit "1."

11.     The EEOC issued Plaintiff a Notice of Right to Sue ("RTS"). A copy of the RTS letter is attached as Exhibit "2."

12.     Plaintiff files this Complaint within ninety days of receiving his RTS letter.

## FACTUAL ALLEGATIONS

13.     Benchmark hired Plaintiff in August, 2002, to work at its facility in Huntsville, Alabama.

14.     Plaintiff's last position held with Benchmark was Precision Assembler II.

15.     Plaintiff's direct supervisor was Cliff Wade ("Wade"), an African American male, at all times relevant to this action.

16.     Wade reported to Phillip Cherry ("Cherry"), a Caucasian male, at all times relevant to this action.

17.     Plaintiff also reported to Cherry, to the extent he was Plaintiff's manager.

18.     The circumstances giving rise to this action occurred on or around January, 2020, through June, 2020, which was in the middle of the COVID-19 pandemic.

19.    One of Benchmark's employment policies was that it would be considered job abandonment for an employee to not report to work, or otherwise communicate with Benchmark, within three workdays after an approved absence.

20.    Cherry instructed Plaintiff not to request leave under the Family Medical Leave Act ("FMLA"), and told Plaintiff that he could instead use any available vacation and sick time for absences. At this time, Cherry assured Plaintiff that Benchmark would continue to be "flexible" with his work schedule if Plaintiff exhausted available vacation and sick time.

21.    In early 2020, Plaintiff communicated to Wade and Cherry that he needed flexibility to take time off to care for his wife, who was undergoing medical treatment for eye cancer.

22.    Plaintiff missed work on April 22, 23, and 24, 2020. Plaintiff communicated with Wade regarding these absences.

23.    On April 22, 2020, Plaintiff confirmed with Wade that his April 22, 23, and 24, 2020, absences would be counted at the end of the quarter when Benchmark closed for mandatory leave.

24.    On April 27, 2020, Plaintiff communicated to Wade that he was not feeling well, and that he was experiencing chills and nausea.

25.     On April 28, 2020, Plaintiff communicated to Wade twice that he still did not feel well, once in the morning and again around 4:20 p.m. Wade did not respond to Plaintiff.

26.     On April 29, 2020, around 7:00 a.m., Wade communicated to Plaintiff to apologize for not responding the previous day. Since it was the third day since Plaintiff's absence, Wade also communicated to Plaintiff that he needed a doctor's excuse to clear Plaintiff to return to work.

27.     On April 29, 2020, around 9:00 a.m. Plaintiff communicated to Wade that he had a doctor's appointment at 9:30 a.m. The doctor did not want Plaintiff—who now had a fever—to return to work until Monday, November 4, 2020, if Plaintiff received a timely, negative COVID-19 test result. Plaintiff provided Wade his doctor's excuse from this visit.

28.     On May 5, 2020, Wade communicated with Plaintiff, asking whether he received his COVID-19 test result. Plaintiff responded to Wade, stating that, although his COVID-19 test was negative, he was returning to the doctor that day for blood work.

29.     On May 12, 2020, Plaintiff communicated with Wade, stating that he needed additional time to heal, and that he hoped to return to work the following day on May 13, 2020. Wade responded, "Okay."

30.     On May 13, 2020, Plaintiff communicated with Wade requesting an additional sick day, as he was required to take pain medicine every four to six hours. At this time, Wade told Plaintiff that he would be coded for "sick" the week of May 11 through 15, 2020, and that he would contact Plaintiff by the end of the day because Plaintiff needed to fill out a form for Benchmark's human resources department.

31.     On May 13, 2020, around 5:30 p.m., Plaintiff called Wade, as he never followed up with Plaintiff regarding the human resources paperwork. Wade agreed to instead follow up with Plaintiff the following morning.

32.     On May 14, 2020, around 9:00 a.m., Cherry contacted Plaintiff to inquire about his COVID-19 status and symptoms. At this time, Cherry told Plaintiff that he was going to put him down for unpaid sick leave. Cherry indicated that the unpaid sick leave would cover May 11 through May 15, 2020.

33.     On May 18, 2020, around 6:15 a.m., Plaintiff communicated with Cherry, stating that he could not make it to work, and that he would return the next day. Cherry responded, "Okay."

34.     On May 19 and 20, 2020, Plaintiff communicated with Chery regarding the need for additional time for family reasons.

35.     On May 23, 2020, Plaintiff received his termination letter from Benchmark for alleged job abandonment.

36.     Neither Wade nor Cherry indicated Plaintiff would be terminated if he failed to return to work during their communications in May, 2020.

37.     Around June, 1, 2020, Plaintiff sent a letter to Tracy Biles ("Biles"), Benchmark's human resources manager, informing her that he had been in near constant communication with his supervisors and that it should not be considered job abandonment. Biles further faulted Plaintiff for allegedly making "no effort to work with [Cherry], or [herself] to plan for [his] excessive time out," although he had been in constant contact with his supervisors.

38.     On June 16, 2020, Biles responded to Plaintiff via email, stating that she could not change termination decision. Notably, Biles faulted Plaintiff, in part, for not request FMLA leave, despite the fact that he had suffered COVID-19 symptoms and possible exposure to the virus.

39.     Despite being a good employee for nearly eighteen years, Benchmark terminated Plaintiff on May 21, 2020, for alleged job abandonment, which Plaintiff contends was pretext for unlawful discrimination giving rise to this action.

40.     Plaintiff was a good employee for Benchmark for nearly eighteen years without any disciplinary or attendance issues prior to the circumstances in 2020.

41.     Plaintiff was satisfactorily performing his job duties at all times relevant to this action and was qualified for his position, with nearly eighteen years of experience.

42.     Plaintiff would have requested FMLA leave had he not been repeatedly directed by his supervisors to not request FMLA leave. Plaintiff would have been entitled to FMLA leave, particularly for COVID-19 exposure and to care for his wife.

43.     Benchmark, despite knowing about Plaintiff's health issues and his wife's medical condition, failed to provide Plaintiff with any guidance to properly complete an FMLA request.

44.     After exhausting all vacation and sick leave, Benchmark required Plaintiff to take unapproved leave and further instructed him not to seek FMLA leave.

45.     Benchmark subsequently used Plaintiff's alleged "unapproved" absences in support of their decision to terminate him.

46.     Unlike Plaintiff, Benchmark did not terminate Caucasian employees for job abandonment in the event the exceed their allotted vacation and sick leave.

47.     Unlike Plaintiff, Benchmark did not direct Caucasian employees not to take FMLA leave, particularly when the additional leave would ensure they could retain their employment.

48.     Unlike Plaintiff, Benchmark did not use unapproved absences relating to family or personal reasons, or COVID-19 related issues, against Caucasian employees in enforcing Benchmark's attendance policies.

49.     Unlike Plaintiff, Benchmark gave Caucasian co-workers more leniency under its progressive discipline policy

50.     Benchmark replaced Plaintiff with a Caucasian male.

## COUNT I
### *(FMLA Interference)*

51.     Count I arises from the circumstances and conduct alleged *supra*, Paragraphs 1 through 51.

52.     Benchmark is a covered employer as defined under 29 U.S.C. § 2611(4)(A).

53.     Plaintiff is an eligible employee as defined under 29 U.S.C. § 2611(2)(A).

54.     Plaintiff's medical conditions, particularly diabetes and COVID-19 exposure, constituted a serious medical condition under the FMLA.

55.     Plaintiff's need to care for his wife, due to her serious medical condition (here, cancer), entitled him to FMLA leave.

56.     Benchmark had knowledge of Plaintiff's eligibility and need for FMLA leave at all times relevant to this action.

57.     Benchmark—after misleading Plaintiff about his FMLA rights—terminated Plaintiff for job abandonment.

58.     Benchmark failed to appropriately inquire further into Plaintiff's need and qualification for FMLA leave.

9

59.     Benchmark intentionally encouraged Plaintiff to take unapproved leave, and made assurances that they would "remain flexible," rather than have Plaintiff seek FMLA leave, which he likely would have qualified for.

60.     Benchmark's actions interfered with the exercise of Plaintiff's substantive rights under the FMLA.

61.     Plaintiff respectfully prays that this Court assume jurisdiction of this action and, after trial, grant the following relief for Benchmark's interference with exercise Plaintiff's rights under the FMLA:

(a)     issue a declaratory judgment that Benchmark's employment policies, practices, procedures, conditions and customs, including the action taken against Plaintiff, violated Plaintiff's rights as secured by the FMLA;

(b)     order that Plaintiff be placed into a position at Benchmark equivalent in duties and hours of work to his prior position;

(c)     issue a permanent injunction enjoining Benchmark, its agents, successors, employees, attorneys and those acting in concert with Benchmark, from continuing to violate Plaintiff's rights and the rights of others similarly qualified under the FMLA;

(d)     award Plaintiff damages for back pay, front pay, benefits, and other monetary damages, including compensatory, liquidated, and nominal damages;

(e)     award Plaintiff reasonable costs, attorney's fees, and expenses; and

(f)     award Plaintiff such other relief and benefits as the cause of justice may require.

**COUNT II**
*(FMLA Retaliation)*

62.    Count II arises from the circumstances and conduct alleged *supra*, Paragraphs 1 through 51.

63.    Benchmark intentionally discriminated against Plaintiff for attempting to exercise FLMA leave that he was entitled.

64.    After inquiring about FMLA leave in 2020, including in April, 2020, Plaintiff suffered an adverse employment action as he was terminated for unapproved absences for alleged job abandonment.

65.    Plaintiff was terminated despite Benchmark's assurances that they would remain flexible with Plaintiff's work schedule.

66.    Plaintiff respectfully prays that this Court assume jurisdiction of this action and, after trial, grant the following relief for Benchmark's violation of the FMLA's prohibition against retaliation:

(a)     issue a declaratory judgment that Benchmark's employment policies, practices, procedures, conditions and customs, including the action taken against Plaintiff, violated Plaintiff's rights as secured by the FMLA;

(b)     order that Plaintiff be placed into a position at Benchmark equivalent in duties and hours of work to his prior position;

(c)    issue a permanent injunction enjoining Benchmark, its agents, successors, employees, attorneys and those acting in concert with Benchmark, from continuing to violate Plaintiff's rights and the rights of others similarly qualified under the FMLA;

(d)    award Plaintiff damages for back pay, front pay, benefits, and other monetary damages, including compensatory, liquidated, and nominal damages;

(e)    award Plaintiff reasonable costs, attorney's fees, and expenses; and

(f)    award Plaintiff such other relief and benefits as the cause of justice may require.

### COUNT III
*(Race Discrimination in Violation
of Title VII and § 1981)*

67.    Count III arises from the allegations pleaded *supra*, Paragraphs 1 through 51, which constituted unlawful discrimination against Plaintiff in terms, conditions, and privileges of employment on the basis of his race, which is African American, in violation § 1981 and Title VII.

68.    Benchmark's actions of discrimination against Plaintiff were intentional, performed with malice and/or done with reckless disregard to Plaintiff's federally protected rights.

69.     Due to Benchmark's unlawful race discrimination, Plaintiff suffered adverse employment actions including, but not limited to, pretextual attendance violations and termination.

70.     Benchmark would not have terminated Plaintiff but for his race, particularly as Caucasian employees were not (and are not) subjected to the same attendance and failure to follow its progressive discipline policy.

71.     As a direct and proximate consequence of Benchmark's unlawful race discrimination, Plaintiff lost wages, benefits, and other accrued emoluments associated with her employment; Plaintiff has been caused to suffer intense emotional distress, embarrassment, humiliation, anxiety, and concern; Plaintiff is entitled to an award of back pay, front pay, benefits, reinstatement, consequential, and compensatory damages against Compass; that Benchmark's conduct was willful, wanton, and/or reckless or otherwise improper and egregious to a degree that would require or otherwise substantiate the allowance of punitive damages in an amount to be determined by the trier of fact.

72.     Plaintiff has and will continue in the future to suffer pecuniary losses as a direct result of Benchmark's racial discrimination in violation of § 1981 and Title VII.

73.     Plaintiff respectfully prays that this Court assume jurisdiction of this action and, after trial, grant the following relief for Benchmark's violation of prohibition against retaliation under § 1981 and Title VII:

(a)     issue a declaratory judgment that Benchmark's employment policies, practices, procedures, conditions and customs, including the action taken against Plaintiff, violated Plaintiff's rights as secured by the FMLA;

(b)     order that Plaintiff be placed into a position at Benchmark equivalent in duties and hours of work to his prior position;

(c)     issue a permanent injunction enjoining Benchmark, its agents, successors, employees, attorneys and those acting in concert with Benchmark, from continuing to violate Plaintiff's rights as well as those who are similarly situated pursuant to § 1981 and Title VII;

(d)     award Plaintiff damages for back pay, front pay, benefits, and other monetary damages, including compensatory, punitive, liquidated, and nominal damages;

(e)     award Plaintiff reasonable costs, attorney's fees, and expenses; and

(f)     award Plaintiff such other relief and benefits as the cause of justice may require.

Respectfully submitted this the 3rd day of October, 2021

/s/ *Philip M. DeFatta*
Philip M. DeFatta (ASB-9307-R7F)
*Attorney for Plaintiff*
WATSON MCKINNEY, LLP
200 Clinton Avenue, West, Suite 110
Huntsville, Alabama 35801
(256) 536-7423 telephone
(256) 536-2689 fax
defatta@watsonmckinney.com


**DEFENDANT TO BE SERVED BY CERTIFIED MAIL**:

Benchmark Electronics Huntsville, Inc.
2 North Jackson St., Suite 605
Montgomery, Alabama 36104

# EXHIBIT
# 1

| CHARGE OF DISCRIMINATION | AGENCY: | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; see Privacy Act Statement before completing this form. | FEPA<br>(X) EEOC | |

| and EEOC |
|---|
| *(State or local Agency, if any)* |

| NAME *(Indicate Mr., Ms., or Mrs.)*<br>**Mr. Abraham Kirondomara** | | HOME TELEPHONE NO. *(Include Area Code)*<br>256-763-1562 |
|---|---|---|
| STREET ADDRESS<br>168 Ranier St | CITY, STATE AND ZIP CODE<br>Meridianville, AL  35803 | DATE OF BIRTH<br>01/24/1976 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME<br>Benchmark Electronics, Inc. | NO. OF EMPLOYEES/MEMBERS<br>20+ | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|---|
| STREET ADDRESS<br>4807 Bradford Dr. NW | CITY, STATE AND ZIP CODE<br>Huntsville, AL 35805 | COUNTY<br>Madison |

| NAME | | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|---|
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*<br><br>(X) RACE    (X )COLOR    SEX    (X)  RELIGION    X)  NATIONAL ORIGIN<br><br>·(X) RETALIATION    AGE    (X) DISABILITY    ( )OTHER *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>*EARLIEST*<br>04/19/2020    *LATEST*<br>05/21/2020 |
|---|---|
| | CONTINUING ACTION (X) |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

     I worked for Benchmark Electronics, Inc. ("Benchmark"), beginning August, 2002. My last position held with Benchmark was "Precision Assembler II." In March, 2020, I needed to take leave to care for my wife who was undergoing cancer treatment. However, my manager (Phillip Cherry, Caucasian) told me not to request FMLA, and that I could instead use approved company leave. As discussed below, he later used this against me as pretext to terminate my employment.

     On April 21, 2020, I took leave due to diabetes and the risk of contracting COVID-19 at work. I made my employer aware of this situation by informing both my supervisor (Cliff Wade, African-American) and manager. My manager (Phillip Cherry) was over my department, including over me and Cliff. I communicated regularly with my supervisor and manager regarding my absences, including by providing doctor notes. I regularly updated Cliff Wade and Phillip Cherry regarding my condition. However, on May 21, 2020, I was terminated for alleged job abandonment, which I disputed. Benchmark filled my position with a Caucasian (Eric), who, upon information and belief, is also a natural citizen and not a Muslim. I believe that Phillip Cherry and/or Rhonda Bennett (Caucasian) were the primary decisionmakers for my termination.

| | NOTARY - (When necessary to meet State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT<br>*Abraham Kirondomara* |
| 11/17/2020<br>Date    Charging Party *(Signature)*<br>*Abraham Kirondomara.* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(Day, month, and year)*<br>11/17/2020 |

EEOC Form 5 (Rev. 06/92)

*[Notary seal: THERESA WILLIS, NOTARY, My Comm. Expires Oct. 17, 2023, ALABAMA STATE AT LARGE, PUBLIC]*

ABRAHAM KIRONDOMARA EEOC CHARGE CONTINUATION PAGE . . .

I believe that my termination was due to my (1) race and/or color of my skin (here, African-American), actual or perceived, and national origin (here, Tanzanian). Particularly, Benchmark (including through my supervisor and manager, who are both Caucasian) did not subject other Caucasian co-workers to the same attendance and leave policies, and they would permit Caucasian co-workers more leniency under Benchmark's progressive discipline and appeal policies. I was also (2) subjected to the same disparate treatment and ultimate termination due to my national origin, actual or perceived, and (3) religion, actual or perceived, compared to my co-workers. For example, my manager would often not let me go to the Mosque for prayer at lunch. In contrast, he would honor religious obligations for Christian co-workers.

I further believe my disparate treatment and termination was due to my (4) disability (here, diabetes and COVID-19), actual or perceived; (5) in retaliation for seeking reasonable accommodations for my disabilities; (6) and/or that Benchmark failed to provide me with a reasonable accommodation for my disabilities, all in violation of the Americans with Disabilities Act.

I declare under penalty of perjury that the foregoing is true and correct.

11/17/2020
**Date**

_Abraham Kirondomara._
**Charging party (Signature)**

# EXHIBIT
# 2



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 651-7020
FAX (205) 212-2105
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS ENCLOSED

RE:    EEOC Charge No: 420-2021-00434
       Charging Party: Abraham Kirondomara
       Respondent: Benchmark Electronics, Inc

Abraham Kirondomara c/o
Phillip Defatta, Esq
Watson McKinnt. LLP
200 Clinton Avenue W Suite 110
Huntsville, AL 35801

AUG 1 0 2021

Dear Phillip Defatta,

The United States Equal Employment Opportunity Commission (EEOC) issued the enclosed Dismissal and Notice of Rights (Notice) in the above-referenced charge on the date reflected thereon. Specifically, on that date, EEOC sent you an email notification that EEOC had made a decision regarding the above-referenced charge and advised you to download a copy of the decision document from the Portal. Our records indicate you have not downloaded the Notice from the Portal. For your convenience, a copy of the Notice is enclosed in this letter.

Please note that if the Charging Party wants to pursue this matter further in court, Charging Party must file a lawsuit within 90 days of the date they receive the Notice. The 90-day period for filing a private lawsuit cannot be waived, extended, or restored by the EEOC.

I hope this information is helpful. If you have questions, please contact Angela Howard, Intake Supervisor by telephone at (205) 651-7017 or email at Angela.Howard@eeoc.gov.

Sincerely,

Carlos Sellers OAA

August 5, 2021

_____
Your Name
Your Title

_____
Date Mailed

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Abraham Kirondomara<br>168 Raner Street<br>Huntsville, AL 35803 | From: | Birmingham District Office<br>Ridge Park Place<br>1130 22nd Street South<br>Birmingham, AL 35205 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2021-00434 | LASHAUNDA LOVE,<br>Investigator | (205) 651-7039 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*for   James C Love Sr*

**BRADLEY A. ANDERSON,**
**District Director**

July 7, 2021

(Date Issued)

Enclosures(s)

| cc: | Benchmark Electronics Inc.<br>c/o Leah Freed, Shareholder<br>Ogletree Deakins<br>2415 E Camelback Rd., Ste. 800<br>Phoenix, AZ  85016 | Abraham Kirondomara<br>c/o Philip DeFatta, Esq.<br>Watson McKinnt, LLP<br>200 Clinton Avenue W.<br>Suite 110<br>Huntsville, AL 35801 |
|---|---|---|

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.</u>**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include **the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➤ **Only one** major life activity need be substantially limited.
➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.